**SPRINGFIELD FIRE & MARINE INS. CO. v. Wm. CAMERON & CO., Inc.**

No. 1729.

Court of Civil Appeals of Texas. Waco.

July 20, 1936.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiff in error.

Sleeper, Boynton & Kendall, of Waco, for defendant in error.

ALEXANDER, Justice.

On August 21, 1933, the Springfield Fire & Marine Insurance Company issued and delivered to W. W. Roscoe as owner a policy of insurance by which it insured him to the extent of $750 against loss by fire on a frame building situated in Rosebud, Tex. The policy contained a loss payable clause in favor of Wm. Cameron & Co., Inc., as mortgagee, as its interest might appear. It also contained the usual provision that as to the interest of the mortgagee it should not be invalidated by any act or neglect by the mortgagor or owner and that in case of any other insurance upon the property, the insurer should not be liable to the mortgagee for a greater proportion of the loss than the amount this policy should bear to the whole of the insurance on the property "payable to, held by or consented to by said mortgagee." It provided for cancellation only after ten days' written notice to

the mortgagee. The policy was delivered to and held by the mortgagee at its home office in Waco. On December 7, 1933, Roscoe, the owner of the property, without the knowledge or consent of the mortgagee, secured from St. Paul Fire & Marine Insurance Company another policy on the same property for the sum of $1,000 and notified the Springfield Fire & Marine Insurance Company to cancel its policy. This last policy did not contain any provision in favor of Wm. Cameron & Co., Inc., the mortgagee. On December 8, 1933, the agent of the Springfield Fire & Marine Insurance Company applied to the local agent of the mortgagee at Rosebud for a return of its policy, stating to him that the owner of the property had canceled said policy. The agent of the mortgagee advised the insurance company's agent that the policy was at the home office of the mortgagee and that he would have to communicate with the home office concerning the application for cancellation. The property was damaged by fire on December 11, 1933, before the home office was heard from.

In a suit by Wm. Cameron & Co., Inc., against Springfield Fire & Marine Insurance Company to recover on the policy in question, judgment was rendered for plaintiff for the sum of $283.11, being the amount of its debt against Roscoe, with interest. It was also decreed that said insurance company should be subrogated to any rights that Wm. Cameron & Co., Inc., might have against W. W. Roscoe on its debt against him and the lien securing the same to the extent that defendant should be required to pay in discharge of this judgment. The defendant sued out this writ of error.

■ The parties will be referred to as in the lower court. The defendant here contends that the owner of the property had a right to control the insurance, and that his act in attempting to cancel the policy sued on and in taking out a new policy in the St. Paul Fire & Marine Insurance Company in fulfillment of his obligation to keep the property insured for the protection of the mortgagee, as provided for in the mortgage, which latter policy, it is claimed, inured to the benefit of the mortgagee by virtue of the equitable assignment thereof as provided for in the mortgage, affected a cancellation of the policy sued on so far as the mortgagee is concerned and forced the mortgagee to look exclusively to the new policy for compensation. It also contends

that in the event it should be held that it was not relieved of all liability by virtue of the attempted cancellation of its policy, that under the provisions of its policy it should not be held liable for a greater proportion of the loss than the amount its policy bore to the whole of the insurance against the property. These same contentions were considered and overruled by the Supreme Court in the case of Union Assur. Society v. Equitable Trust Co. (Tex.Com. App.) 94 S.W.(2d) 1151. Under the express terms of the policy, as well as the provisions of Revised Statutes, art. 4931, the interest of the mortgagee in the policy could not be canceled or invalidated by any act on the part of the owner, hence the policy sued on remained in full force. The second policy was not "payable to, held by or consented to by mortgagee." The mortgagee was not a party to the new policy and was in nowise required to prorate its loss between the two policies. The defendant did not make the St. Paul Fire & Marine Insurance Company a party to this suit nor otherwise seek recovery against it for any part of the loss incurred. These assignments are therefore overruled.

The case was being tried before a jury. The damage caused by the fire did not result in a total loss of the building. Cone, the assistant manager of the plaintiff's lumber yard at Rosebud, was the only witness who testified concerning the extent of the loss. At the conclusion of the evidence the trial court instructed a verdict for plaintiff. The defendant contends that the trial court had no right to instruct a verdict on the uncorroborated testimony of plaintiff's agent. Plaintiff's said agent testified that he was acquainted with the market value of property in Rosebud and was experienced in making estimates for repair work; that the reasonable market value of the building in question prior to the fire was $1,200 and its market value after the fire was only $500 or $600; that he had made a written estimate of the cost of repairing the building and had furnished a copy thereof to the insurance company along with the proof of loss prior to the filing of this suit. He estimated the cost of repairing the building at $414. The proof of loss, and a copy of Cone's estimate of the cost of repairing the building, were introduced in evidence. The insurance company did not cross-examine Cone with reference to this feature of his testimony nor otherwise attempt to discredit his

evidence. It offered no evidence to the contrary, although it introduced several witnesses who resided at Rosebud and who were familiar with the property.

 We recognize that there is a general rule that testimony of an interested party to a suit, though not·contradicted by any other witness does no more than raise an issue for the determination of the jury. Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447. But there is an apparent exception to this rule where the testimony of the interested witness is not contradicted by any other witnesses, or attendant circumstances, and the same is clear, direct, and positive, and free from contradictions, inconsistencies, and circumstances tending to cast suspicion upon it. In such cases it is held that an instructed verdict may be given on such testimony. 41 Tex.Jur. 942; American Surety Co. v. Whitehead (Tex. Com.App.) 45 S.W.(2d) 958, par. 3; Golden v. First State Bank (Tex.Civ.App.) 38 S.W.(2d) 628; Chesapeake & O. Ry. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L. Ed. 983; M. H. Thomas & Co. v. Hawthorne (Tex.Civ.App.) 245 S.W. 966, par. 3 (writ refused); Hill v. Staats (Tex.Civ. App.) 187 S.W. 1039; Id. (Tex.Civ.App.) 189 S.W. 85 (writ refused); Joffre v. Mynatt (Tex.Civ.App.) 206 S.W. 951; Felts v. Bell County, 103 Tex. 616, 132 S.W. 123; Luling Oil & Gas Co. v. Edwards (Tex. Civ.App.) 32 S.W.(2d) 921, par. 20, (writ dismissed); Dunlap v. Wright (Tex.Civ. App.) 280 S.W. 276; Fidelity & Casualty Co. v. Branton (Tex.Civ.App.) 70 S.W. (2d) 780, par. 10 (writ dismissed); Texas State Mut. Fire Ins. Co. v. Farmer (Tex. Civ.App.) 83 S.W.(2d) 411, par. 1 (writ dismissed); Brown v. McKinney (Tex.Civ. App.) 208 S.W. 565, par. 4 (writ refused); Trinity Gravel Co. v. Cranke (Tex.Com. App.) 282 S.W. 798, par. 5; Beene & Trotter v. Rotan Grocery Co., 50 Tex.Civ.App. 448, 110 S.W. 162; Still v. Stevens (Tex. Civ.App.) 13 S.W.(2d) 956 (writ dismissed). We think this latter rule should be applied in cases like the one here under consideration where the facts establishing the truth or falsity of the matter testified to by the interested witness do not rest exclusively within the bosom of the witness but are open and visible to every one, and it is easy for the opposite party to procure testimony to the contrary in the event the evidence of the interested witness be false. In the case at bar the insurance company was advised long in advance concerning plaintiff's contention as to the extent of the loss, the manner in which it had estimated the loss and how it expected to prove same. The extent of the loss was open and visible to every one, and if the defendant had thought that plaintiff's evidence was incorrect, it could have easily procured testimony to the contrary. It allowed the evidence to go unimpeached and without being discredited in the least, and although it was warned in advance by the trial judge's announcement that he intended to accept the evidence as true and to give an instructed verdict thereon, it made no request to be permitted to withdraw its announcement of rest and to introduce testimony to the contrary. The judgment of the trial court for $283.11 was well within the estimate of the loss as made by the witness in question. This assignment is overruled.

The judgment of the trial court is affirmed.